UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ANGELA C. DAVISON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CV-129 |
| | ) | (VARLAN/SHIRLEY) |
| FRED KANIPE and JEFFREY KANIPE, | ) | |
| | ) | |
| Appellees. | ) | |

## MEMORANDUM OPINION

Appellant Angela C. Davison ("Ms. Davison") has appealed the Bankruptcy Court's order denying her Amended Motion to Declare Violation of the Automatic Stay and to Impose Sanctions. [*See* Doc. 1-20.] Ms. Davison argues that the Bankruptcy Court erred by holding that the retention of property of the estate by Quick Money, its owners, and agents was not a violation of the automatic stay pursuant to 11 U.S.C. § 362. Appellees Fred Kanipe and Jeffrey Kanipe (hereinafter collectively referred to as "Quick Money") contend that the Bankruptcy Court correctly determined that there was no willful violation of the automatic stay. After the parties filed their appellate briefs, the Sixth Circuit's Bankruptcy Appellate Panel ("BAP") decided a case pertinent to the issues in the present appeal. *Buckeye Check Cashing, Inc. d/b/a CheckSmart v. Meadows* (*In re Meadows*), 396 B.R. 485 (B.A.P. 6th Cir. 2008). The Court then provided the parties with an opportunity to present their respective positions in light of the BAP's decision in *In re Meadows*. Quick Money

filed a supplemental brief reiterating its position that there was no violation of the automatic stay. [Doc. 8.] Though given the opportunity to do so, Ms. Davison did not submit a supplemental brief. The Court has carefully reviewed the parties' briefs [Docs. 5, 6, 8] in light of the entire record and controlling law. For the reasons set forth below, the decision of the Bankruptcy Court will be affirmed.

**I.    Procedural Background**

On September 26, 2007, Ms. Davison filed a Motion to Declare Violation of the Automatic Stay and to Impose Sanctions. [Doc. 1-3.] On February 9, 2008, the United States Bankruptcy Court for the Eastern District of Tennessee ("Bankruptcy Court") entered an order [Doc. 1-21] denying Ms. Davison's motion for reasons given in the Bankruptcy Court's accompanying memorandum. [Doc. 1-20.] Ms. Davison then filed a notice of appeal on February 29, 2008. [Doc. 1-22.] Parties have since submitted briefs in support of their respective positions. The matter is now ripe for the Court's consideration.

**II.    Relevant Facts**[1]

Appellee Fred Kanipe is the owner of a sole proprietorship doing business as Quick Money, and Appellee Jeffrey Kanipe is the manager of Quick Money, which has its sole place of business in New Market, Tennessee. Quick Money operates under the "Deferred Presentment Services Act," as authorized by Tenn. Code Ann. § 45-17-101, *et seq*. "Deferred presentment services" involve a "transaction pursuant to a written agreement

---

[1] These facts, unless otherwise indicated, were stipulated to by the parties as undisputed facts. [*See* Doc. 1-16.]

involving the following combination of activities in exchange for a fee: (A) Accepting a check dated on the date it was written; and (B) Holding the check for a period of time prior to presentment for payment or deposit." Tenn. Code Ann. § 45-17-102(3).

Beginning in August of 2006, Ms. Davison utilized the deferred presentment services of Quick Money. On August 1, 2007, Ms. Davison signed a Deferred Presentment Services Agreement dated August 1, 2007, and gave Quick Money a check for $230.00 payable to Appellant Fred Kanipe, also dated August 1, 2007. Ms. Davison then obtained $200.00 from Quick Money.

On August 16, 2007, Ms. Davison filed her Chapter 7 bankruptcy case. Schedule B filed with the bankruptcy petition listed Ms. Davison's U.S. Bank checking account. Schedule F filed with Ms. Davison's bankruptcy petition listed Quick Money as one of her creditors. The bankruptcy notice was mailed to Quick Money on August 19, 2007.

On August 31, 2007, Quick Money made a deposit in its checking account with BB&T Bank. The deposit included Ms. Davison's $230.00 check made payable to Appellee Fred Kanipe. The check cleared Ms. Davison's U.S. Bank checking account on September 4, 2007. Ms. Davison had written several checks to other payees, but U.S. Bank returned those checks with the notation that there were insufficient funds to allow their respective checks to clear.

The parties agree that Quick Money offered to return the $230.00 to Ms. Davison on October 17, 2007, October 18, 2007, and October 23, 2007. The $230.00 obtained from Ms. Davison's bank was eventually returned to her attorney by trust fund check of Quick

3

Money's attorney dated November 7, 2007, as was the transmittal letter. According to Ms. Davison, the total bank liability for the returned checks, including applicable fees and charges totaled $296.00 and a collection company, Nexcheck, assigned one of the returned checks is seeking $47.98. [Doc. 1-27 at 14-15.]

### III. Standard of Review

The Federal Rules of Bankruptcy provide that "[o]n an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Id.* In other words, the district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *Wesbanco Bank Barnesville v. Rafoth*, 106 F.3d 1255, 1259 (6th Cir. 1997).

### IV. Analysis

When a bankruptcy case is commenced, the Bankruptcy Code provides for the creation of an estate, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Thus, upon the commencement of a bankruptcy case, a debtor's checking account and all the money in the account become "property of the estate." *In re Meadows*, 396 B.R. at 490. The Bankruptcy Code also provides that "[e]xcept as provided in subsection (b) of this section, a petition filed under section 301 . . . operates as a stay, applicable to all entities, of – . . . (3) any act to

4

obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a). The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment. *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 382 (6th Cir. 2001) (citing *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986)). The automatic stay is intended to "preserve what remains of the debtor's insolvent estate and . . . provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *Hosp. Staffing Servs., Inc.*, 270 F.3d at 382-83 (quoting *Holtkamp v. Littlefield*, 669 F.2d 505, 508 (7th Cir. 1982) (omission in original) (internal quotation marks omitted)). Notably, 11 U.S.C. § 362(b)(11) excepts "the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument" from the automatic stay. Under 11 U.S.C. § 362(k)(1), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages."

In this appeal, Ms. Davison raises the sole issue of whether the Bankruptcy Court erred in denying Debtor's Motion to Declare Violation of the Automatic Stay and to Impose Sanctions by holding that the retention of property of the estate by Quick Money, its owners,

5

and agents was not a violation of the automatic stay pursuant to 11 U.S.C. § 362.[2] In its decision, the Bankruptcy Court found no willful violation of the automatic stay because Quick Money, upon learning of the bankruptcy filing, immediate took actions to return Ms. Davison's funds. Ms. Davison contends that the funds held by Quick Money are property of the estate, that Quick Money's retention of the funds was a violation of the automatic stay, and that Quick Money's retention of the funds constituted a willful violation of the automatic stay. In its appellate brief, Quick Money contends that there was no willful violation of the automatic stay in light of the immediate and multiple offers to return the funds by Quick Money after learning of Ms. Davison's bankruptcy.

In support of her appeal, Ms. Davison relies on a case that has been reversed by the BAP. *In re Meadows*, 379 B.R. 737 (Bankr. S.D. Ohio 2008), *rev'd*, *Buckeye Check Cashing, Inc. d/b/a CheckSmart v. Meadows (In re Meadows)*, 396 B.R. 485 (B.A.P. 6th Cir. 2008). Similar to the present case, *In re Meadows* involved a short-term lender who negotiated a check after the debtor filed her bankruptcy petition. 379 B.R. at 740. After the debtor's counsel sent a demand letter seeking return of the funds received from negotiation

---

[2]The Court notes that Ms. Davison identified two additional issues in her statement of issues on appeal. [Doc. 1-28.] These additional issues were not raised nor fully developed in Ms. Davison's initial appellate brief. [Doc. 5.] Thus, those issues have been waived for purposes of appeal. *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 544 n.8 (6th Cir. 2002) ("It is well established that an issue not raised in a party's briefs on appeal may be deemed waived."); *Aetna Cas. and Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 545 (6th Cir. 2000) (finding it inappropriate to consider an issue not raised in an appellant's initial brief since appellee did not have a chance to respond); *Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369, 376 (6th Cir. 1999) ("The defendant did not address this point in their appellate brief, and we consider the issue to be abandoned by the defendants.").

6

of the check and the short-term lender did not return the funds after about one year, the debtor filed a motion requesting the court find the short-term lender violated the automatic stay. *Id.* The bankruptcy court found that the funds in the debtor's checking account, including the funds received from the negotiated check, were property of the estate and that it was a violation of the automatic stay for the short-term lender to retain the funds received from presentment of the check. *Id.* at 744. In reversing the bankruptcy court, the BAP found that the transferred bank funds were no longer property of the estate once the check was honored and that retention of funds received from an unauthorized transfer of property did not violate the automatic stay. *In re Meadows*, 396 B.R. at 493-96.

In the present case, the Bankruptcy Court, relying on the now reversed *In re Meadows* bankruptcy court decision, found that the transferred funds were property of the estate and that there was a violation of the automatic stay though no willful violation occurred. Though the Court comes to the same conclusion as the Bankruptcy Court that Ms. Davison's motion should be denied, the Court's reasoning differs from that of the Bankruptcy Court and is guided by the analysis of the BAP in *In re Meadows*, 396 B.R. 485.

The BAP in *In re Meadows* held:

> [W]hen the check delivered to [the short-term lender] by the Debtor was then honored by the Debtor's bank, the estate's interest in the funds was completely transferred. 11 U.S.C. § 101(54)(D). At the same time, the funds ceased to be property of the estate. Stated differently, the estate's property interest in the bank funds was transferred to [the short-term lender] when the Debtor's check was honored.

7

*In re Meadows*, 396 B.R. at 492 (citing *Barnhill v. Johnson*, 503 U.S. 393, 394-95 (1992)). Because the disputed funds were no longer property of the estate once transferred to the short-term lender, the short-term lender's retention of the funds was not a violation of the automatic stay. *Id.* at 494.

In the present case, the Court finds that "the estate's property interest in the bank funds was transferred to [Quick Money] when [Ms. Davison's] check was honored." *Id.* at 492 (citing *Barnhill*, 503 U.S. at 394-95). The term "transfer" is defined as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). In *Barnhill*, the Supreme Court recognized that "[f]or the purposes of payment by ordinary check, . . . a 'transfer' as defined by § 101(54) occurs on the date of honor." 503 U.S. at 400. Based upon this precedent, the BAP in *In re Meadows* concluded that the post-petition honoring of a pre-petition check effects a transfer of property of the estate, and "regardless of whether the transfer was authorized by any section of the Bankruptcy Code, a transfer did in fact occur." *In re Meadows*, 396 B.R. at 493. The BAP also expressed concern that certain provisions of the Bankruptcy Code would be rendered redundant or superfluous if estate property transferred without authorization remained property of the estate. *Id.* at 493-94. In light of the BAP's decision and reasoning in *In re Meadows*, the Court reaches a similar conclusion in finding that the funds in Ms. Davison's checking account were no longer property of the estate once the check was honored and the funds transferred to Quick Money.

8

The Court also finds no violation of the automatic stay in this case. Because the funds in Ms. Davison's bank account were no longer property of the estate once transferred to Quick Money, Quick Money's retention of the funds was not a violation of the automatic stay. *See In re Meadows*, 396 B.R. at 494. Additionally, retention of funds received from an unauthorized transfer of property of the estate in the form of the post-petition cashing of a pre-petition check does not violate the automatic stay. *Id.* at 496. The Sixth Circuit's BAP has emphasized that by enacting 11 U.S.C. § 362(b)(11), "Congress wanted to make clear that 'the automatic stay is not intended to interfere with the rights of a holder of a negotiable instrument to obtain payment.'" *Id.* (citations omitted). It was further noted by the BAP that 11 U.S.C. § 362(b)(11)'s exception to the automatic stay was not limited to persons without knowledge of the bankruptcy filing and, "[t]hus, under the plain language of the statute, a holder of negotiable instrument may present the instrument for payment even if the holder knows that the drawer has filed for bankruptcy relief." *Id.* at 495. As noted by the BAP in *In re Meadows*, the majority of courts "considering the issue have agreed that the retention of funds received from an unauthorized transfer of property of the estate in the form of the post-petition cashing of a pre-petition check does not violate the automatic stay." *Id.* at 496 (citing *Blasco v. Money Servs. Ctr. d/b/a Cash Connection (In re Blasco)*, 352 B.R. 888, 894 (Bankr. N.D. Ala. 2006); *Thomas v. Money Mart Fin. Servs., Inc. (In re Thomas)*, 311 B.R. 75, 79 (Bankr. W.D. Mo. 2004); *In re Franklin*, 254 B.R. 718, 720 (Bankr. W.D. Tenn. 2000); *In re Figueira*, 163 B.R. 192, 195 (Bankr. D. Kan. 1993)).

In the present case, the Bankruptcy Court's finding of a violation of the automatic stay followed the bankruptcy court's decision in *In re Meadows*, 379 B.R. 737. [*See* Doc. 1-20 at 8-9.] However, as previously noted, the BAP reversed the bankruptcy court's decision in *In re Meadows* on the issue of whether retention of funds by a short-term lender constituted a violation of the automatic stay. *See* 396 B.R. at 494-96. After careful consideration, the Court is persuaded by the reasoning of the BAP in *In re Meadows* and the majority of other courts that have found that "retention of funds received from an unauthorized transfer of property of the estate in the form of the post-petition cashing of a pre-petition check does not violate the automatic stay." 396 B.R. at 496. Despite being given the opportunity to do so, Ms. Davison has not distinguished *In re Meadows* from the present case, not argued that *In re Meadows*, 396 B.R. 485, is inapplicable to the present case, nor otherwise contended that the Court should not follow the reasoning of the BAP in that case. In light of all this, the Court determines that Quick Money did not violate the automatic stay in this case.[3] Because there was no violation of the automatic stay, the Court need not determine whether a willful violation occurred. Thus, the order of the Bankruptcy Court is affirmed though for different reasons than those stated by the Bankruptcy Court.

---

[3]The Court notes that Quick Money was not free to retain the monies it obtained even though there was no violation of the automatic stay. In *In re Meadows*, the BAP recognized that the unauthorized transfer to the short-term lender was subject to avoidance under 11 U.S.C. § 549(a) and that the funds were to be returned to the debtor. 396 B.R. at 496. However, this is not at issue in the present case since Quick Money has already returned the funds to Ms. Davison's attorney. [*See* Docs. 1-16, 8.]

## V. Conclusion

For the foregoing reasons, Ms. Davison's appeal will be dismissed and the order of the bankruptcy court denying the Amended Motion to Declare Violation of the Automatic Stay and to Impose Sanctions is hereby **AFFIRMED**.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE